WARING and another *v.* LOUISVILLE & NASHVILLE R. Co.[2]

*(Circuit Court, S. D. Alabama.* February, 1884.)

**1. CONTRACTS.**

When writings which amount to a contract between the parties are not complete in themselves to show what the contract was, the court must look to the surrounding circumstances when the contract was made.

*Van Epps* v. *Walshe,* 1 Woods, 598.

*The Orient,* 4 Woods, 262; S. C. 16 FED. REP. 916.

**2. LEASE.**

The implication of law, resulting from a payment of rent under a tenancy at will, that the tenancy becomes one from year to year, is not strong enough to overcome the fact that there was a distinct understanding between the parties as to the nature of the tenancy.

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.
[2] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

This is an action of ejectment brought by the plaintiffs, Moses Waring and Virginia E. Mitchell, against the Louisville & Nashville Railroad Company, to recover the possession of a triangular lot of ground near the foot of Theatre street, in the city of Mobile, and damages for its detention. A jury has been waived by written stipulation, and the case submitted to the court.

From the evidence adduced on the trial of the case the court finds the following as the facts:

(1) That on the thirteenth day of March, 1877, the plaintiffs, Moses Waring and Virginia E. Mitchell, under a written lease to E. D. Morgan and James A. Raynor, as trustees and receivers, etc., of the property described in the pleadings, for the period of five years, commencing on the first day of April, 1877, and ending on the first day of April, 1882, for which the lessees were to pay as rent the sum of $400 per annum, in quarterly payments, viz., $50 to Waring on the twenty-fifth days of July, October, January, and April of each year, and the like sum of $50 to Mrs. Mitchell, on the same days of payment. That said lessees went into possession under said lease, and made said rent payments regularly, and continued to occupy the property under the lease until May, in the year 1880, when they assigned and transferred all their interest in the said lease and leased property to the defendant, the Louisville & Nashville Railroad Company, who thereupon entered, under the said lease, as tenants of said Waring and Mitchell, and paid the rent under said lease to said Waring and Mitchell until April 1, 1882, when said lease expired.

(2) That at the expiration of the said lease, the said Louisville & Nashville Railroad Company applied to said Waring, representing and acting for himself and Mrs. Mitchell, to have the lease renewed, but Mr. Waring declined to renew the lease or to make a new one of any sort, but at the same time told the agents of the defendants that the plaintiffs would not interfere with the defendants continuing to use the lot as it had previously done, until the plaintiffs should come to some definite conclusion as to what they would do about the lot, and the defendant continued in the possession and occupancy of the same.

(3) That negotiations were thereupon entered into between the parties, the plaintiffs desiring some qualification of the use of the premises, and also desiring to secure a side track connecting with the Mobile & Ohio Railroad, and the defendant desiring to purchase or secure a permanent lease.

(4) Pending the negotiations the following writings passed between the parties, to-wit:

"LOUISVILLE & NASHVILLE RAILROAD CO.

*To Mrs. Virginia Mitchell, Dr.*

1882.                                                              MOBILE.

August 2d. For rent of ground foot of Theatre street, Mobile, for tracks entering freight-yard, as per lease.

For quarter ending July 25, 1882, - - - - $50
(Fifty Dollars.)

Correct:                                    Approved:
   R. P. BROWN, Clerk.                       J. T. HARAHAN, Superintendent.
                                          Audited:
   D. W. C. ROWLAND, Gen. Supt.              C. QUARRIER, Comptroller

Received, Fifty 00-100 Dollars.
*Date 4th August*, 1882.                     VIRGINIA E. MITCHELL,
Witness:                                       By WM. BARNEWALL, Agent.
   W. S. ARMOUR, Cashier.

"LOUISVILLE & NASHVILLE RAILROAD CO.

*To Mr. Waring, Dr.*

1882.       MOBILE.

August 2d. For rent of ground foot of Theatre street, Mobile, for tracks entering freight-yard, as per lease, in hands of J. T. Harahan.

For quarter ending July 25, 1882,    -    -    -    -    -   $50

(Fifty Dollars.)

Correct:       Approved:

R. P. BROWN, Clerk.       J. T. HARAHAN, Superintendent.

Audited:

D. W. C. ROWLAND, Gen. Supt.    C. QUARRIER, Comptroller.

Received fifty dollars, due July 1, 1882.

*Date August* 4, 1882.       M. WARING.

Witness:

W. S. ARMOUR, Cashier."

The words "fifty dollars, due July 1, 1882," were inserted by plaintiff Waring when the document was presented to him by the agent of the company.

On August 4, 1882, there was no lease in the hands of J. T. Harahan, except the old lease referred to in the first finding aforesaid.

(5) That thereafter negotiations looking to a permanent arrangement were carried on between the plaintiffs and the agents of defendant, at least so far as that plaintiff Waring wrote several letters, and received from J. T. Harahan, defendant's superintendent of division, the following reply:

"*Louisville & Nashville Railroad Company,* operating *New Orleans, Mobile & Texas Railroad,* as reorganized.

J. T. Harahan, Supt.       OFFICE OF SUPERINTENDENT, NEW ORLEANS, LA., Sept. 11, 1882.

*M. Waring, Esq., Mobile, Ala.*—DEAR SIR: I have been patiently waiting to hear from our folks in Louisville, but as most of them are absent in New York I cannot hear from them for a few days yet. Will let you hear about the lease soon as I can hear from them.

Yours, etc.,       J. T. HARAHAN, Supt."

And finally, prior to November 25, 1882, said Waring informed said defendant that the plaintiffs would make no arrangement for said Louisville & Nashville Railroad Company to continue to occupy the lot unless said railroad company would stop using it as a switching ground for their cars; that this the said Louisville & Nashville Railroad Company declined to agree to, and thereupon, on the twenty-fifth of November, 1882, a written notice to quit was signed by the plaintiffs and regularly served on the defendant, and on the first day of December another written paper signed by both of the plaintiffs demanding the possession of the property, which defendant never surrendered, but still holds.

(6) That the rental value of the property exceeded $400 per year.

*Peter Hamilton* and *Thomas A. Hamilton,* for plaintiffs.

*Gaylord B. Clark,* for defendant.

PARDEE, J. On the trial of the case, after the plaintiffs had closed and the two writings mentioned in finding "four" were offered, counsel for defendant moved to strike out all the parol evidence adduced by plaintiffs in the case which tended to vary the written receipt and contract and the implication of law arising from the acceptance of

rent, which would exclude all of plaintiffs' evidence, save the lease and notices to quit, aforesaid, on the ground that the said writings constituted a written contract between the parties, complete in all its parts as aided by implications of law, for the lease of the property in question, and that parol evidence is incompetent to vary the terms of such contract. This motion was reserved to be passed upon with the merits. The view that I take of the case is that after the expiration of the five years' lease, under the understanding and consent of the parties, the continued holding of the defendant was as a tenant at will. Either party could have ended the tenancy without consent of the other. See Bouv. Law Dict. *verbo*, "Tenant at Will." This was undoubtedly the case down to August 4, 1882, when a quarter's rent was paid and the writings purporting to be a charge for and a receipt of rent were given. And that this was the view taken of it by the parties is shown by the negotiations that were carried on with a view to obtain a lease for a fixed term. This simplifies materially the question of the force and effect to be given to the writings of August 4, 1882.

Conceding these writings to amount to a contract between the parties, they are not complete in themselves to show what the contract was. By themselves, they do not make a lease for a quarter, nor for a year, nor for the term of the old lease. We must look to the surrounding circumstances. "Another rule of law, just as well settled, is that the obligation of a contract is what the parties intended to mean when they entered into it. What they both understood to be the contract, that is the contract; and to arrive at the understanding of the parties, the courts are authorized to look at the circumstances which surrounded them when they made it." *Van Epps* v. *Walsh*, 1 Woods, 598; *The Orient*, 4 Woods, 262; S. C. 16 Fed. Rep. 916. In this case, what were the surrounding circumstances when the writings were made? The defendant was a tenant at will of the premises in question, desirous of purchasing or obtaining a permanent lease. The plaintiffs were not willing to sell, nor lease for a fixed time, unless with stipulations as to use, and they desired concessions as to a side track to connect with the Mobile & Ohio road. There was no lease, save the old and expired one, in the hands of Harahan. And negotiations were pending between the parties for a new lease. That the plaintiffs intended to grant a lease by the writings is negatived by all the circumstances. That the defendant intended by these writings or that its agents thought it had acquired a lease for any fixed period is negatived by all the circumstances, and by the letter of Harahan, superintendent, written a month afterwards. The legitimate construction of the writings, then, is that they were receipts for rent past due under a tenancy at will. The implication of law resulting from a payment of rent under a tenancy at will, that the tenancy becomes one from year to year, (see Bouv. Law Dict. *verbo*, "Tenant at Will," and cases there cited,) is not strong enough to overcome the

fact that there was a distinct understanding between the parties as to the nature of the tenancy. Woods, Landl. & Ten. 25, 60, 61, and cases cited; and see, also, *Crommelin* v. *Thiess*, 31 Ala. 418. Had the defendant held over after the expiration of the five-year lease, without any agreement on the part of the plaintiffs as to the character of such holding, the defendant would have been a tenant on sufferance, the plaintiffs having a right to elect whether to resume possession or to treat the defendant as a tenant from year to year. Had the defendant held over without any agreement with the plaintiffs, and had paid, and plaintiffs had received, rent, the law would have implied a contract of lease from year to year. Had the defendant held over without any agreement with the plaintiffs, and then the writings of August 4th had been passed between the parties, I am inclined to the opinion that the law would have implied a renewal of the five-year lease; and this by fair construction of the writings themselves, otherwise unexplained.

But the case made differs from all of these hypothetical cases. By understanding of the parties the defendant held over as a tenant at will, and thereafter the minds of the contracting parties did not meet, and although rent was paid and received on the terms of the old lease, the character of defendant's holding was not changed.